UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

**TANYA MARIE REGAN,**

    **Movant,**

v.                                   **Civil No. 1:22-CV-040-P**
                                       **(Crim. No. 1:19-CR-021-P(1))**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255 and,
ORDER DENYING CERTIFICATE OF APPEALABILITY**

    Before the Court is Defendant/Movant Tanya Marie Regan ("Regan")'s motion for relief under 28 U.S.C. § 2255. Mot. Vacate 1-11, ECF No. 1. Also pending is the government's response (ECF No. 10) and Regan's reply (ECF No. 11). After considering the § 2255 motion, the record, briefing, and applicable law, the Court **DENIES** the motion to vacate.

**I.**     **BACKGROUND** [1]

    **A.**     **Underlying Facts- Regan and husband Christopher Regan Make and Share Videos of Sexual Abuse of Multiple Minor Children**

    Regan and her husband, Christopher James Regan ("Christopher"), physically and sexually abused at least four children and videotaped their crimes. Presentence Report ("PSR") ¶¶ 20-22, CR ECF No. 156-1. The PSR provided extensive details of the minor abuse. *See, e.g., Id.* ¶¶ 29, 35, 39, 55, 72, 74-75, 77; PSR Addendum 1-2, CR ECF No. 171. Regan admitted to her abusive conduct in the Factual Resume. Factual Resume ("FR") 4-11, CR ECF No. 120. In addition to the hands-on abuse of these children, Regan and Christopher also graphically

---

[1] "CR ECF No. __" will be used to refer to entries on the docket of the underlying criminal proceeding, *United States v. (Tanya) Regan*, No. 1:19-CR-021-P(1). "ECF No. __" will be used to refer to entries on the docket of this § 2255 motion assigned civil case number 1:22-CV-040-P. Christopher Regan is a co-defendant, and he also has sought relief under § 2255, which is separately addressed in civil case number 1: 22-CV-037-P.

1

discussed the sexual abuse of children, including the children they had personally victimized, over numerous social-media platforms. *See, e.g.*, PSR ¶¶ 26-54, CR ECF No. 156-1. They also both sent child pornography to one another over the internet. *See, e.g., Id.* ¶¶ 42, 44; FR 7, CR ECF No. 120.

### B. Regan is Indicted on Multiple Counts and Counsel Moves to Suppress.

The defendants unlawful conduct was discovered after Google detected Christopher sending Regan child pornography through a Gmail account and reported the incident to the National Center for Missing and Exploited Children ("NCMEC"). PSR ¶ 20, CR ECF No. 156-1. Law enforcement officers executed a search warrant at their home in Big Spring, Texas, and other places and seized electronic devices containing child pornography, including videos of Regan sexually abusing two victims, "John Doe #1" and "John Doe #2." PSR ¶¶ 61-64, CR ECF No. 156-1; FR 5-7, CR ECF No. 120. In two separate interviews, conducted with warnings under *Miranda v. Arizona*, 386 U.S. 436 (1966), Regan admitted to sexually abusing John Does #1 and 2 and creating videos of the abuse. PSR ¶¶ 23-24, 60, CR ECF No. 156-1.

A grand jury ultimately charged Regan and Christopher in a superseding indictment with numerous offenses, including conspiracy to produce child pornography depicting John Does #1 and 2, multiple counts of production of child pornography depicting those same two victims, and possession of child pornography. Superseding Indictment, CR ECF No. 45.

Before trial, Regan's attorney from the Federal Public Defender's office in Lubbock ("Trial Counsel") filed several discovery motions as well as two separate motions to suppress the government's evidence. CR ECF Nos. 17-19, 75, 95. In the first motion to suppress, Trial Counsel argued that the affidavit supporting the search warrant at Regan's home in Big Spring was unsupported by probable cause and lacking in particularity. Mot. Suppress 3-6, CR ECF No. 75. In the second motion to suppress, counsel argued that Regan's first *Mirandized* interview should be suppressed because it was the fruit of an invalid search warrant, and that her second *Mirandized* interview should be suppressed because the interviewer

allegedly failed to honor her request for counsel. Second Mot. Suppress 3-6, CR ECF No. 95.  The Court denied both motions. Orders, CR ECF Nos. 111, 112.

### C.     Plea Agreement, Sentencing, and Direct Appeal.

In the time leading up to trial, Trial Counsel also attempted to negotiate a plea agreement with the government. The government's evidence against Regan, however,  included, among other things, (1) a large number of videos of her sexually abusing John Does #1 and 2 in which her face, body, and tattoos were fully visible, (2) two separate *Mirandized* interviews in which she admitted to some of the charged offense conduct, including the sexual abuse of these minor victims, and (3) extensive social-media chats in which she admits to sexually abusing multiple children, including John Does #1 and 2. *See, e.g.*, FR 5-10, CR ECF No. 120;  PSR ¶¶ 23-24, 26-64, 60-64, CR ECF No. 156-1.

Trial Counsel ultimately negotiated a plea agreement under which, among other things, Regan would plead guilty to conspiracy to produce child pornography and possession of prepubescent child pornography and agree to testify against Christopher. In exchange, the government would drop the remaining counts against her, including three counts of producing child pornography and one other count of possession of child pornography. *See generally* Plea Agreement and Supplement, CR ECF Nos. 119, 121. Regan accepted the plea offer and underwent a thorough rearraignment proceeding where she pleaded guilty in open court.  Rearraignment Tr.  22-25, CR ECF No. 209. The Court ultimately accepted her guilty plea. CR ECF Nos. 127, 150.

At the sentencing proceeding, the Court expressed concerns that the plea was so favorable to Regan it should not be accepted. Sentencing Tr. 4-5, CR ECF No. 204.The Court ultimately did accept the plea agreement, in part out of consideration to Regan's victims. *Id*. The Court ruled on objections that had been filed by Trial Counsel, and Trial Counsel argued for a lesser sentence based on Regan's history of being sexually abused, her extensive manipulation at the hands of Christopher, and her ultimate candor with law enforcement and agreement to cooperate against her husband. *Id.* at 8-9, 9-13, 14-20. The Court sentenced Regan

to the maximum sentence of 50 years in prison, emphasizing the heinous nature of the offense conduct and its effect on her victims. *Id.* at 23-30.

On appeal, Regan was represented by a different attorney from the Federal Public Defender's Office ("Appellate Counsel"). Appellate Counsel was limited by the terms of the appeal waiver in Regan's plea agreement, which limited her ability to seek appellate review of anything other than a few specified issues. Plea Agreement 6, CR ECF No. 119. Appellate counsel argued on appeal that the government breached the plea agreement by relying at sentencing on statements Regan made online about sexually abusing another identified victim. *See generally* Appellant's Br. at 4-5, *United States v. Regan*, No. 20-10259 (5th Cir. July 24, 2020). Appellate Counsel recognized that the standard of review was plain error, but argued this standard was met. *See, e.g, id.* at 6, 14. Appellate counsel sought resentencing and for the plea agreement to be vacated. *Id*. at 5, 17. The Fifth Circuit rejected these arguments and affirmed Regan's sentence. *United States v. Regan*, 831 Fed. App'x 743, 744-45 (5th Cir. 2020). The judgment was entered on December 23, 2020. *See* Judgment, *United States v. Regan*, No. 20-10259 (5th Cir. Dec. 23, 2020).)

### D.     Post Judgment Motion History

After the resolution of the direct appeal, Regan, on two separate occasions, filed motions that this Court construed as seeking relief under § 2255, but when Regan declined to then pursue relief under § 2255, each case was dismissed without prejudice. *See Regan v. United States* No. 1:21-CV-085-P ( N.D. Tex. June 8, 2021); *Regan v. United States*, No.1:22-CV-012-P (N.D. Tex. April 4, 2022). Regan then filed the instant motion seeking relief under § 2255 filed on April 18, 2022 but signed on April 13, 2022.  Pet. 1, 10, ECF No. 1 (as noted, the instant § 2255 motion is assigned civil number 1:22-CV-040-P). Although the government initially argued the § 2255 motion was limitations-barred, the government filed a separate document to expressly withdraw that argument. Resp.11-12, ECF No. 10; Notice of Withdrawal of Argument 1-3, ECF No. 12.  Thus, the Court turns to the merits of Regan's claims in the pending § 2255 filed on April 13, 2022.

## II.    GROUNDS FOR RELIEF

4

Regan's motion for relief under § 2255 asserts four grounds for relief. Construing these grounds broadly, they include a claim that she: received ineffective assistance of counsel (Ground One); was denied her ability to be evaluated for an insanity defense or for competency to stand trial (Ground Two); was coerced by counsel to enter her plea and cooperation agreement (Ground Three); and she received an illegal sentence (Ground Four). Mot. Vacate 7-8, ECF No. 1. Each of these overall grounds for relief include between three and nine "supporting facts," some of which read as if they are separate grounds for relief. *Id.*

### III. APPLICABLE LAW AND ANALYSIS
#### A. Standard of Review of a § 2255 motion

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence on four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" 28 U.S.C. § 2255(a); *see United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

#### B. Law Applicable to Review of Ineffective-Assistance Claims

#### under § 2255

Ineffective-assistance-of-counsel ("IAC") claims can be raised under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish IAC, "[F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

5

Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This two-part test applies to IAC claims arising from guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To show deficient conduct under *Strickland*, the burden is on the defendant to show that his counsel's representation fell below an objective standard of reasonableness, by identifying acts or omissions of counsel "that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* There is a strong presumption that the performance of counsel falls within this range. *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995). Defendant cannot overcome this presumption with after-the-fact accusations that lack supporting evidence. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (noting that although pro se § 2255 motions are construed liberally, even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue"); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). If counsel provides objectively unreasonable representation during the plea process, the defendant must prove prejudice by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

To prove prejudice generally, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Failure to meet either the deficient-performance or prejudice prongs will defeat a claim of ineffective-assistance. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). The

reviewing court need not address both components if there is an insufficient showing on one. *Id.*

Finally, the Supreme Court has cautioned that "courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 137 S. Ct. 1958, 1961 (2017). Instead, courts should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

### C. Regan's Claims of Ineffective Assistance of Counsel are Conclusory and Without Merit (Ground One)

Regan assert several grounds as to why both his trial and appellate counsel each provided him ineffective assistance of counsel. Mot. Vacate 7, ECF No. 1. Many of Regan's assertions about her counsels' performance are vague and conclusory.

Regan claims that trial counsel allegedly failed to investigate a variety of things, including:

● Reports from NCMEC that led to the Regans' discovery by law enforcement;
● Information the government obtained from various third parties in the course of its investigation, including Google, Tumblr, Elf Freight, Suddenlink, and others; and
● The government's analysis of business records.

Mot. Vacate 7, ECF No. 1.  A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted).

Regan offers nothing whatsoever to make this showing, including any explanation of what trial counsel would have found if he had investigated these matters. Indeed, some of Regan's assertions are directly contrary to the record. She accuses appellate counsel of failing to raise the plain error standard in his appellate brief. Review of the brief belies this claim. *See* Appellant's Br. at 6, 14, *United*

7

*States v. Regan*, No. 20-10259 (5th Cir. July 24, 2020). She also claims that trial counsel failed to object to the affidavit of Investigations Sergeant Marc Thomas of the Howard County Sheriff's Office, which supported the warrant to search her home in Big Spring. But review of the record shows that trial counsel moved to suppress the evidence obtained under that warrant and argued that it was unsupported by probable cause. Mot. Suppress 3-6, CR ECF No. 75. To the extent Regan sought to pursue another ground to attack Sergeant Thomas's affidavit, such as a claim challenging the affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978) (where affidavit included intentional or reckless statements resulted in a warrant lacking probable cause), she has not explained any basis for such attack or why it was unreasonable for Trial Counsel not to make it. Regan likewise fails to acknowledge the fact that appellate counsel was constrained by the appeal waiver in the plea agreement. Plea Agreement 6, CR ECF No. 119.

The remainder of Regan's claims are difficult to understand. She claims that her trial counsel "failed to prepare and or produce *Brady* and *Giglio* material," but *Brady* and *Giglio* materials were produced by the government to the defense. Mot. Vacate 7, ECF No. 1. To the extent Regan is arguing that counsel failed to do something with the *Brady* (*v. Maryland,* 373 U.S. 83 (1963)) and *Giglio (v. United States*, 405 U.S. 150 (1972)) material the government provided to him, she has entirely failed to explain what this is. She also claims that appellate counsel "failed to recognize mistakes and acts that were violated. Privacy Act Computer Fraud and Abuse Act and Stored Communications Act (considering we live in a cut, copy, and paste world)." *Id.* This allegation is confusing, but to the extent Regan contends that the investigation or proceedings violated these statutes, she has not explained such claim or how it could support a claim of ineffective assistance under *Strickland*.

Overall, trial counsel sought discovery from the United States, reviewed that discovery, filed motions to suppress, negotiated a favorable plea agreement with the government, filed objections to the PSR, and used Regan's personal and psychological history to argue for a reduced sentence. Appellate counsel, constrained by the appeal waiver, presented the argument on appeal that she should be resentenced before a different district judge.

In sum, Regan has not shown that she received ineffective assistance of counsel because her arguments are conclusory.

### D. Regan's Claims about her Mental Health are Unsupported, Conclusory, and in Conflict with the Record. (Ground Two)

Regan next claims that her attorneys failed to investigate her mental health or to pursue theories of insanity or incompetency to stand trial. Mot. Vacate 7 (including "Supporting Facts" 5 and 7 of Ground One), ECF No. 1. Trial and conviction of a defendant while mentally incompetent, can constitute a denial of due process. *See Cooper v. Oklahoma*, 517 U.S. 348 (1996). An insanity defense, however, requires the defendant to prove by clear and convincing evidence that "at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense." 18 U.S.C. § 17(a). "The constitutional standard for competency to stand trial is whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as a factual understanding of the proceedings against him.'" *Carter v. Johnson*, 131 F.3d 452, 459 (5th Cir. 1997) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "A mentally ill defendant can still be competent to stand trial . . .." *Thomas v. Lumpkin*, 995 F.3d 432, 451 (5th Cir. 2021).

Regan offers nothing that would meet either standard. Although she unquestionably has some mental-health history, she presents no psychological or expert opinion that these conditions were, at the time of the offense or before her guilty plea, anywhere near severe enough to prevent her from standing trial or being found guilty. Nor does she present any reliable accounts from witnesses who observed her during the relevant times and found that she acted irrationally or oddly to a degree that would suggest significant mental impairment. Instead, Regan offers only a list of mental health disorders along with conclusory assertions that they support various defenses.

Nor does Regan identify anything that would have put her attorneys on notice of any successful or even potential basis for a defense of insanity or incompetency. A petitioner who claims that her attorney failed to adequately investigate her mental health must "allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Thomas*, 995 F.3d at 451 (quoting *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005)). Again, Regan asserts that she has mental health conditions but fails to

provide support for her argument that her conditions were serious enough to lead to a successful defense.

Indeed, as in other areas, some of Regan's claims contradict the record. In particular, Regan's current claims about her mental health maladies are more extensive than she claimed when speaking to the Court or to the Probation Office. For example, at her plea hearing, the magistrate judge asked Regan if she had ever been diagnosed with any emotional or mental disability or problem, and Regan stated that she had "been diagnosed with bipolar and a few others that I do not remember." Rearraignment TR. 6-7, CR ECF No. 209. She explained that there was nothing in those conditions that affected her ability to think clearly or understand the proceedings, that she was not taking any medication for her mental health, and that she did not need to take medication to enter her plea. *Id.* She also told the Court that she had no other mental condition that would affect her ability to understand the proceedings. *Id.* Trial Counsel told the Court he believed that Regan was competent and that he had not seen any indication that her mental health conditions affected her ability to understand the proceedings. *Id.* at 7.

Regan's claims that psychological conditions affected her ability to understand the proceedings, are not documented in the PSR. The PSR mentions Regan's bipolar disorder and other issues, but it makes no mention of "multipersonality disorders," "Asperger's," or "manic depress [ive disorder]." *See* PSR ¶¶ 170-74. Regan's claim that she suffers from these afflictions, therefore, lacks sufficient support other than her own self-serving statements.

Moreover, Regan's claims that her trial attorney failed to investigate a history of sexual abuse and further abuse at the hands of Christopher, are undermined by the fact that counsel actually did present those arguments. In fact, the majority of Trial Counsel's sentencing argument focused on the sexual abuse Regan suffered as a child and adolescent and the manipulation and abuse that Christopher forced on her. Sentencing Tr. 14-18, CR ECF No. 204.

In addition, it appears Regan asserts that her trial counsel allegedly did not file a notice of insanity defense under Federal Rule of Criminal Procedure 12.2(a) despite her wishes. First, this claim is at odds with her sworn statements during her plea hearing that she was fully satisfied with the advice and representation she received from counsel during her case. Rearraignment Tr. 10, CR ECF No. 209. And, Regan again fails to make a showing under either prong of the *Strickland* test. The raising of an insanity defense "is a matter of trial strategy" that must be evaluated on a case-by-case basis and "will often fail even if raised and even where

some indications of irrationality exist." *McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990). Given Regan's failure to present any basis to conclude that she was severely mentally ill at any point, she cannot claim that Trial Counsel's failure to pursue an insanity defense fell below an objective standard of reasonableness or that she was prejudiced in any way as a result.

Finally, to the extent that Regan claims error simply because the Court did not order her evaluated for competency or an insanity defense, separate and apart from any claims that her counsel was ineffective for not investigating or requesting such an evaluation, those claims are barred by the terms of her plea agreement. In that agreement, Regan expressly "waive[d] [her] right to contest the conviction, sentence, fine and order of restitution or forfeiture in any collateral proceeding, including proceedings under . . . 28 U.S.C. § 2255." Plea Agreement 6, CR ECF No. 119. The only exceptions to this waiver that apply to § 2255 proceedings concern the voluntariness of the defendant's plea and a claim of ineffective assistance of counsel. *Id.*

### E. Involuntary or Coerced Plea Claim Contradicted by the Record. (Ground Three)

Regan also appears to argue that she did not knowingly and voluntarily enter into her plea because she did not understand the plea colloquy, her responses to the magistrate judge's questions were "coached," and that her trial counsel threatened her with an "unreasonable sentence" that coerced her into pleading guilty. Mot. Vacate 7, ECF No. 1.

These claims are in direct conflict with her sworn statements made during her plea hearing. Nothing in the transcript of that hearing suggests that she did not comprehend the proceedings or the consequences of her guilty plea. To the contrary, during that hearing, Regan told the magistrate judge that she had no mental or physical condition that affected her ability to understand the proceedings, she was not under the influence of alcohol or drugs, she was not taking medication that affected her cognition, and she did not need medicine to proceed with her guilty plea. Rearraignment Tr. 5-7, CR ECF No. 209. She further stated unambiguously that no one had threatened or made promises to her, other than those in the plea agreement, to convince her to plead guilty. *Id.* at 13. Regan also stated that she had consulted with counsel about her decision to plead guilty and was fully satisfied with his advice. *Id.* at 10. She admitted that she committed the essential elements of the offense and that she read, understood, signed, and admitted to the facts in her extensive and detailed Factual Resume. *Id.* at 11-13, 21-22.

Regan's counsel informed the Court that he had no concerns about Regan's competency, and he specifically stated that her conditions did not affect or impair her ability to understand. *Id.* at 7. Trial Counsel also told the Court that he was satisfied that she was pleading guilty knowingly and voluntarily. *Id.* at 13-14.

Regan's statements made under oath in open court are entitled to a strong presumption of truth. The Fifth Circuit has stated that it "considers plea colloquies 'solemn declarations in open court' which 'carry a strong presumption of verity.'" *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006) (quoting *United States v. Adam*, 296 F.3d 327, 333 (5th Cir. 2002)); *see also Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (noting that a defendant's statements at a plea hearing "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible") (citations omitted). Regan offers nothing to rebut that presumption other than her own self-serving and unsupported allegations.

Regan also claims that she was coerced into her guilty plea because counsel "threatened an unreasonable sentence" if she did not plead guilty. Mot.Vacate 7, ECF No.1. Even if this were not directly in conflict with her sworn statements during her plea colloquy— and it is—this claim appears to be Regan's recharacterization of counsel's sound legal advice. Under the superseding indictment, Regan faced a maximum possible sentence of 150 years in prison. Under the plea agreement that her counsel negotiated, Regan's maximum possible sentence was 50 years. In light of the Court's comments at sentencing—including that "this is the strongest case that [the Court] can imagine for the imposition of a statutory maximum sentence" and that "[m]any would argue, and [the Court] struggled with, that 50 years is not enough" Sentencing Tr. 28-30, CR ECF No. 204. It appears the coercive and "unreasonable sentence" that Regan refers to, was counsel's accurate prediction of her sentence if she had proceeded to trial.

Finally, Regan contends that government agents interviewed and elicited information from her after her guilty plea. Although this is accurate, it provides no basis for relief because such interviews were expressly permitted by the plea agreement she knowingly and voluntarily entered into. Regan's counsel attended every such meeting, rendering *Massiah v. United States*, 377 U.S. 201 (1964) (defendant's statements obtained by law enforcement officers surreptitiously could not be used as evidence against that defendant), entirely inapplicable. To the extent

that Regan's claims her agreement to cooperate with the government and testify against her co-defendant Christopher "divid[ed] their Sanctity of Marriage" (Mot. Vacate 7, ECF No. 1.), that was a predictable consequence of her cooperation agreement.

### F. Sentencing Claims Barred by her Regan's Plea Agreement and alternatively are Without Merit (Ground Four)

Regan's claims that her sentence was unconstitutional and unlawful are without merit and barred by her plea agreement. As an initial matter, her "supporting facts" fail to identify any infirmity with her sentence, as they simply rehash the claims she made earlier in her motion and which are rejected for the reasons identified above. Mot. Vacate 8, ECF No. 1. They do not supply any reason to think her sentence was unlawful or unconstitutional in any way.

In addition, as noted above, Regan's plea agreement waives her ability to challenge her sentence in a proceeding under 28 U.S.C. § 2255, and she has identified no exception to that waiver. Thus, the Court also rejects Regan's claims regarding her sentence.

For all of these reasons, Tanya Marie Regan's motion for relief under 28 U.S.C. § 2255 is denied.

### IV. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. FED. R. APP. P. 22(b). Rule 11 of the Rules Governing Section 2255 Proceedings now requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 11(a) (December 1, 2009). This Court may only issue a COA if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court concludes that Tanya Marie Regan has not made a showing that reasonable jurists would question this Court's rulings and **DENIES** a certificate of appealability for the reasons stated in this order.

## V.     CONCLUSION

It is therefore **ORDERED** that Tanya Marie Regan's motion to vacate under 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**. It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this **23rd day** of **March, 2023**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE